I'm Jamie Rash on behalf of Mr. Thomas, the appellant in this case, I'm going to try to reserve two minutes for rebuttal. This is a somewhat straightforward case as far as federal habeas cases go. There's only one issue before the court here today and it is whether Mr. Thomas got his state court conviction. We know that he didn't, but the issue under the Supreme Court cases are whether he wanted to appeal and so instructed his attorney or whether he received a reasonable consultation about the advantages and disadvantages of appealing and would have wanted to had he done so. So I'll be focusing on both those issues here today. With respect to the question of, did he ask his lawyer to appeal? There's two things that I would want the court to know about that. First is the Nevada Supreme Court disregarded Mr. Thomas' testimony on this topic, which was that after his sentencing, he asked that an appeal be filed. Our position is the only reasonable interpretation of the record is that Mr. Thomas requested an appeal and his lawyer talked him out of it, which violates Flores Ortega. The government says that the state court made a credibility determination and found the So, what's our, we couldn't overturn that, right, unless it was, there was a 2254 D2 challenge and it was objectively unreasonable determination of the facts. What's your response to that? I agree with everything you just said. Those are the limitations of federal habeas. I guess from our position, no court ever specifically said anything about Mr. Thomas' testimony, not the Nevada Supreme Court and not the district court below either. Everything focused on what his lawyer said. So I would suggest there is an argument that there wasn't a determination of whether or not he was credible because nobody addressed his testimony and he testified under oath that he requested an appeal. There's a second side to this coin and I think it may be more helpful and to the extent the 2254 problem gets in the way of granting relief, this may be a way to resolve it. There's no question that at the time this was going on in state court, state law required that a notice of appeal be filed if a defendant so-called expressed dissatisfaction with the conviction. I would direct the court to page 142 of the excerpts, a very helpful page that we'll talk about a couple times. As noted there, Mr. Thomas' lawyer agreed that Mr. Thomas was upset that he didn't get a sentence with parole eligibility. The sentence imposed was, of course, without parole eligibility and his lawyer agreed that what should have happened was a sentence with parole eligibility. On that page in the record, his lawyer also notes that Mr. Thomas wanted to fight, that's his word, the lawyer's word, the conviction. So as... I'm sorry, can I ask you to go back to the credibility question? I want to make sure I understand why the Nevada Supreme Court wasn't entitled to defer to the state trial court's determination that Mr. Thomas did not ask Mr. Langford to file a notice of appeal. What was your response? Certainly. It's probably beyond question at this point that those types of credibility determinations are best made at the lower court level, particularly during an evidentiary hearing. So I don't have a problem with that. The issue that I have is that no court, not the trial court and not any court after, ever really discussed Mr. Thomas' testimony. Everything was couched in terms of what his lawyer testified to. No one ever said, well, Mr. Thomas, we don't believe you. I suppose that you can infer that from the ultimate ruling, but to the extent there hasn't been a determination as to his testimony. And I guess that's what I wanted to ask. Is there any authority that you could cite us to where that would be required? Because it does appear, I mean, that the credibility determination was made and it looks like Mr. Langford won the day. And again, that is a way to take the record, but it's hard to say for sure because no one ever said, Mr. Thomas, we don't believe you. So was that, I guess I'm just trying to figure out, you don't have any authority saying that was required? Well, other than the, again, I don't know if we're getting into the sort of silent denial territory of these decisions, but there is, the court has taken these types of questions under the unreasonable determination of facts question. And again, I would just suggest that it, no court has ever determined his credibility, but just to move on from that for a second. Let me ask you about prejudice though, assuming Mr. Thomas's counsel was deficient in failing to file the notice of appeal. What prejudice did Mr. Thomas suffer as a result of that failure? The prejudice, of course, is the loss of opportunity to direct appeal in Flores Ortega and its discussions of Jones and the cases that came before it. The prejudice is the loss of appeal alone, not necessarily that there were great issues that are going to be meritorious as long as there's non-frivolous issues then. Well, but I think there's a presumption of prejudice that my, I guess my question, let me make it more specific. I mean, did Mr. Thomas have any potentially meritorious claims to pursue on a direct appeal? And if so, what were they? I don't know that I saw anything related to that in the briefing. Oh, okay. I appreciate that. And I hope it was in there, but we've discussed several claims that I think he could have raised on direct appeal. The challenge in the uncertified issue to the guilty plea canvas comes to mind as one, but another is at the time of sentencing, the judge made the comment about Mr. Thomas being on probation, and that's the reason for the sentence that was imposed. The comment from the lawyer after that was that that was not true. He was not on probation at the time the offense occurred, and then the court took no steps to explain or revisit the sentence at that point. There's a third issue, which is that under state law, there's a slightly expanded eighth argument as to whether the sentence was cruel and unusual. So if I were the direct appeal lawyer, I would be looking at at least those three issues, and it's entirely possible someone could find even more. So, counsel, I know you're – it seems like you're trying to move off of the whole ineffective assistance counsel issue, but it really is sort of the key issue, obviously, here. And the – what the Nevada Supreme Court, when I'm looking at it here, it seems that Nevada Supreme Court said that counsel testified that appellant never asked him to file a direct appeal. It seems implicit that at least at the time the Nevada Supreme Court is deciding this issue that appellant is saying that he had asked him to file a direct appeal. I see your point that Nevada Supreme Court doesn't explicitly say that, but it's hard to see why the Nevada Supreme – why he's even raising it if he's not arguing that he asked for it. And so, my intuition is that this has to do with whether or not that – the Nevada Supreme Court's implicit view of that, that counsel – that he had – that it's sort of a debate between him and his counsel or a fight, a credibility fight. It seems that's implicit in what they said here, and that would be – then I think our to see whether or not the Nevada Supreme Court's decision was a reasonable or unreasonable view of the facts. But you see it differently than that? You see it as not really a fact fight, as having missed something? I'm trying to figure out how you want us to analyze that. Thank you. I appreciate that. And again, I agree with almost everything you just said. If I were to try and summarize this for you as clearly as possible, I would say there's – as to the question of did he want to appeal, the question is what did he say to his lawyer – whatever our position is, he said, I want to appeal, that should have been the end of the discussion. There shouldn't have been, well, I'll come talk to you in a couple days about it. That's particularly true under Nevada law, which provided at the time that if the defendant says I'm dissatisfied with my sentence, then there was a duty to file a notice of appeal. Under Strickland, that's an ineffectiveness question. The second part of the issue is, to the extent there was confusion about whether he wanted to appeal and the lawyer came and talked to him a couple days later, then I'll take it as, well, that was the consultation that was required by Flores-Ortega, but was it a reasonable consultation? But the Nevada Supreme Court's specific wording in its decision is that counsel testified that appellant never asked him to file a direct appeal. So you're talking about a different set of facts, a set of facts based on what appellant says happened. But the Nevada Supreme Court basically bought this set of facts that they talk about. And so what I'm trying to figure out is do you want us to – you're right that they did not say this is what appellant says and we think he's not credible. They didn't expressly say that. So how do you want us to review that, I guess, is what – it seems to me to be a – we would review whether or not the Nevada Supreme Court's view of the facts was unreasonable, but do you think it's some other type of review? Again, under state law, I guess my position would be he unquestionably expressed his satisfaction. Whether or not we can agree that he directed his lawyer to file appeal, he clearly was unhappy with the sentence he got. He had every reason to be. It was the harshest possible sentence under the plea agreement. And under state law, if he expressed his satisfaction, there was a duty to file notice of appeal. So that's the strickling part of the question, aside from whether he expressly said to file an appeal. That also would have triggered the duty to consult under Flores-Ortega. And if there was a consultation, it had to be a reasonable one, which this one wasn't because it didn't include any discussion about the advantages. And as we discussed, the lawyer was incorrect about the disadvantages because there were meritorious issues which could have been raised. Looks like that's my time. If anyone has any questions. I just have one question. I know you're out of time. I'll give you a minute or so for rebuttal, but I wanted to ask you about one of the uncertified claim issues. What is your best authority that Mr. Thomas's lawyer admitting to the murder count during the plea colloquy invalidated the guilty plea? Thank you. I'm just trying to review the brief here real quick. I know we cited a couple of cases, which was Henderson versus Morgan was, I think the most similar thing that I was able to find in terms of a low functioning individual who pled guilty and may not have completely understood the guilty plea and as evidenced in that case by the one word answers used to respond to the court. And in this particular case, there were those same one word answers, but there was the additional layer of course, when asked if he committed the murder, the lawyers, the one who responded, not Mr. Thomas. And he has, I think rightfully been very upset about that for many years. And so it was something that I wanted to try and include with this court if there were an opportunity to further review it. Thank you very much. Thank you. Good morning, your honors. And may it please the court. My name is Allison Herr. I'm with the Nevada Attorney General's Office and I'm appearing today on behalf of Warden Nevins. Trial counsel was effective in this case because he consulted with Thomas about the appeal and Thomas did not expressly request that he wanted an appeal to be filed. Now Thomas now claims that he directed his attorney to file a notice and the attorney failed to do so. But the state court, as this panel has already pointed out, reviewed that claim and after an evidentiary hearing determined that it wasn't credible. That decision is subject to evidence. There was no, I'm sorry, Ms. Herr, does it matter that there was no specific credibility comment or determination about Mr. Thomas? I don't believe it does, your honor, because I think that's implied by the other findings that the court made when the court specifically indicated that it found the reasoning of the trial counsel to be appropriate and that his actions were appropriate and also made specific findings that they found no evidence to support this idea that he had requested that an appeal be filed. I think all of that is implicit in a finding that Thomas was not credible and that his The opposing counsel suggests that under Nevada state law it was enough that Mr. Thomas said he was dissatisfied with the conviction and verdict and that required his lawyer to file a notice of appeal. Do you disagree with that? Well, your honor, states are certainly allowed to have more restrictive standards, but that doesn't change federal law and in terms of what would be applicable under federal habeas, I believe that would fall under Roe versus Ortega rather than falling under the state case of Lozada. But even to the extent this court were to apply Lozada, it's, I believe that the facts in this case merit that higher standard. There's nothing in Lozada that says that once you obtain consent from your client not to Attorneys and clients are still allowed to strategize as to what their best method is to achieve goals. And here we have trial counsel who followed best practices, who met with his client to try and determine what his client wanted to do. They discussed the merits and potential issues with filing an appeal.  And under Roe, once we have that decision, counsel can rest on that. He's not required to somehow supersede or overcome the free will of his client simply because of dissatisfaction with the sentence. Moreover, that particular objection that he has was an objection dealing with the fact that he felt his attorney had perhaps misrepresented the likelihood of him getting a lesser sentence. That is clearly an ineffective assistance of counsel claim. And so it wouldn't have been a direct appeal claim, it would have been habeas, which is exactly the advice that the attorney talked about, that while you could file a direct appeal, that was not going to go anywhere. I think the specific words they used during the evidentiary hearing was that that was spinning wheels. And the idea was that he, what he ultimately wanted to do was withdraw his plea. They were looking for the fastest and most efficient way to do that. And a determination was made in this case by the client that he would forego that opportunity. So is it your position, I mean, I was trying to figure out what the disadvantages were to pursuing a direct appeal. And you're saying that it would be spinning wheels? What would have been the disadvantage? I think the disadvantage, Your Honor, is just simply the delay in time. Ultimately, the objective here was to attack what the advice was that was given to him by his attorney. That falls squarely within an ineffective assistance claim. And under Nevada law, that would need to be brought by a habeas petition rather than through direct appeal. So filing a direct appeal would simply have tied his case up for an additional year while that was pending before he could proceed with that in a more meritorious fashion in a habeas claim. Let me, can I ask you about the attorney responding on behalf of his client to the guilt on the murder charge? I guess, what's your best authority that supports the position that attorney is permitted to admit a count on behalf of a client's behalf? Your Honor, I'll have to admit that I'm not prepared to respond to that because that was not one of the issues that the court granted a certificate on. I am aware that that was brought up. It is our position following, again, the ruling in the Nevada Supreme Court that there was sufficient evidence to show that that plea was voluntarily and knowingly entered into. The question or the issue that had arose with Mr. Thomas is that Thomas had raised some concern that his co-defendant had been the person who had actually pulled the trigger rather than him. But he was tried under a conspiracy theory of a co-defendant liability. And because they were both in the car, they were both there with the defendant, frankly who the trigger person was is irrelevant to his guilt as to the issue of murder. That doesn't have any impact on the case. And so I think the fact that the attorney did break into the plea agreement to give some clarification on that issue to his client was not inappropriate and it did not impact the knowing aspect of that plea. Well, but it didn't allow his client to answer that question directly. As to that specific question, I think that is correct, Your Honor, but the court did follow up by asking if Mr. Thomas had other questions, if he had other concerns. And in each case, he indicated that he did not and that he was comfortable and that his questions had been answered by his attorney in going through his plea agreement. And so the overall reading when read in context is that he was freely and voluntarily entering into that plea. However, if Your Honor would like us to present additional briefing, I'd certainly be happy to present some supplemental pleadings on that if you would so desire. Your Honor, one of the allegations that's been raised in this is that the attorney perhaps talked Mr. Thomas out of wanting to have that appeal. But I would point out that this argument first presumes that the attorney knew in the first place that Thomas wanted an appeal. Now, Thomas has testified that he tried to tell his attorney during sentencing that he   heard this request. And in fact, during the evidentiary hearing, the trial counsel was questioned both on direct and cross-examination whether he had any memory of this. And the attorney absolutely said this conversation had never taken place, that his client had never said anything to him at sentencing about an appeal. And in fact, the whole reason he went to meet with him two days later was to ascertain whether or not he wanted to an appeal. The attorney specifically indicated that had his client asked for a notice, he absolutely would have filed one. And he went into some detail explaining that he had a standard practice in place in which he always filed a notice of appeal if a client asked and went so far as to say that, to the best of his knowledge, he had never refused any request from a client to file an appeal. But in this case, after consulting with him, he discussed both the advantages and disadvantages of that plea and was able to make then a determination with his client about how they would proceed. But that's not strong-arming someone into or talking them out of an appeal. That is acting as a proper counsel. And since the state court found that there was no evidence to really support Thomas's claim, it's our position, Your Honor, that the attorney in this case has followed the mandates of Roe v. Flores-Ortega. And so we are asking that the district court order be affirmed. If there are no other questions, I would submit, Your Honors. Judge Iacuna, Judge Render, do you have any other questions? I don't. All right. Thank you. Thank you, Mr. Rusch. I'll give you a minute to respond. Appreciate that, and I'll take it. I have a big issue with the case coming down to free choice. Again, let's not lose track. Mr. Thomas is the guy with the third-grade education. He's just not in a position to argue with his lawyer. I doubt that many criminal defendants are. So if his lawyer is telling him there's no traction, it's a waste of time, the person in his position really doesn't have a choice other than to go along with that. But that advice was poor, in fact, below Strickland standards, because it wasn't a waste of time. There were issues that could have been appealed. And a year delay on a guy who has nothing but time, doing 30, 40 years in prison, no chance of parole, that's all Mr. Thomas has. It's just silly to me that any lawyer would forego an extra opportunity at getting errors corrected by saying, let's not do a direct appeal. Let's go with post-conviction. I think we all know the odds of post-conviction relief being granted, as long as anything. Direct appeal was his best shot to get relief on this stuff. And just to go back to the issue of the state law question, for me, it's not a question of state law. If state law required a notice of appeal to be filed if there was dissatisfaction, then that's an ineffectiveness issue under Strickland. This court absolutely can address that as part of its jurisdiction. All right, thank you very much. Thank you both for your oral arguments here today. Greatly appreciated. The case of Kenneth Thomas v. Whitehaven is submitted.
judges: MURGUIA, IKUTA, VANDYKE